IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Case #: 10-CR-50076 |
| DOMINICK PELLETIER, | ) | |
| | ) | Judge Kapala |
| Defendant | ) | |

**MOTION TO SUPPRESS STATEMENTS**

NOW COMES, the defendant Dominick Pelletier (Pelletier) by and through his attorney James I. Marcus, and moves this court for an order suppressing his statements to Special Agents Cherry and Dempsey on August 29, 2008. Additionally, defendant Pelletier further requests that all fruits of the inappropriately obtained statements be suppressed, and that the court conduct an evidentiary hearing. In support of this motion, Pelletier states:

1. Pelletier is charged in a one (1) count indictment with possession of child pornography in violation of 18 U.S.C. §2252A (a)(5)(B). Count 2 of the indictment concerns forfeiture of items seized.

2. On August 29, 2008, Pelletier presented himself to the Chicago office of the FBI for a pre-employment interview.

3. At this interview, a request was made for Pelletier to take a polygraph examination. Pelletier signed a consent and agreed to take this exam.

4. During a pre-test interview, Pelletier told Special Agent Cherry of the FBI, who was the polygraph examiner, that he had done research on the child sex trade in Indonesia for his Master's Degree in Anthropology at Northern Illinois University. Pelletier went on to say that he never

1

    manufactured, possessed or distributed child pornography.

5. At the conclusion of the polygraph test, agent Cherry believed that Pelletier was deceptive on the issue of child pornography. Pelletier stated to agent Cherry that there may be child pornography on his computer as a result of a research project.

6. Agent Cherry then contacted Special Agent Dempsey of the FBI Cyber Squad. Agent Dempsey along with Agent Cherry, who were both armed with guns, then conducted an interrogation of Pelletier at the FBI office in Chicago.

7. This interrogation lasted several hours and was conducted in a small room, no more than 8ft x 12ft. At this point Pelletier's freedom of action was curtailed such that the agent's questioning ripened into a custodial interrogation.

8. Prior to this interrogation, Pelletier was never given his Miranda Warnings nor was he told he was free to leave.

## ARGUMENT

A person subjected to custodial interrogation by law enforcement officers must be informed "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The suspect must be both in "custody" and subjected to "interrogation" before Miranda warnings are required. See, e.g., United States v. Abdulla, 294 F.3d 830, 834 (7th Cir.2002). Pelletier contends that his Fifth Amendment right against compulsory self-incrimination was violated due to the lack of Miranda warnings before the interview, thereby rendering the resulting statements inadmissible in evidence. See Oregon v. Elstad, 470 U.S. 298,

307, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). A threshold issue is whether Pelletier was in custody when he was questioned.

Miranda warnings are required when law enforcement officers question a person who is in custody or otherwise deprived of his or her freedom of action in a significant way. Thompson v. Keohane, 516 U.S. 99, 107, 116 S.Ct. 457, 133 L.Ed. 2d 383 (1995); Miranda, 384 U.S. at 444; United States v. Thompson, 496, F.3d 807, 810 (7th Cir.2007).

The inquiry regarding whether a person was in custody for purposes of Miranda turns on whether or not a reasonable person in the circumstances would have believed that he or she was free to leave. United States v. Barker, 467 F.3d 625, 628 (7th Cir.2006). This test employs an objective standard. United States v. Salyers, 160 F.3d 1152, 1159 (7th Cir.1998). In other words, the question is not whether the particular defendant thought he was free to go, but whether a reasonable person in those circumstances would have so believed. Id. At 1159; see Stansbury v. California, 511 U.S. 318, 323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) ("the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by…the person being questioned"). The subjective beliefs of the law enforcement officers regarding whether the defendant is in custody are irrelevant unless they conveyed their views to the defendant. Michigan v. Chesternut, 486 U.S. 567, 576 n. 7, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988).

The interrogation of Pelletier was conducted at FBI headquarters in Chicago. The room was miniscule, no more than 12ft x 8ft. Entry and exit was strictly controlled by Agent Dempsey. Pelletier was not free to leave. Under the totality of circumstances present here, Pelletier was in custody and thus Miranda Warnings were required prior to his being questioned. United States v. Slaight, 620 F.3d 816 (7th Cir. 2010).

3

WHEREFORE, the defendant requests that this Honorable Court:

a. Suppress any and all alleged statements, communications, and admissions whether inculpatory or exculpatory, written or oral, made by the defendant to federal law enforcement on August 29, 2008;

b. Conduct a pre-trial hearing pursuant to 18 U.S.C. §3501(a) to determine whether the statements alleged have been given freely and voluntarily;

c. For such other relief as the Court deems necessary to ensure fundamental fairness in the defendant's trial.

                                                Respectfully submitted,
                                                DZIEDZIAK & MARCUS, PC.

                                                By:   s/James I. Marcus
                                                        James I. Marcus

James I. Marcus
DZIEDZIAK & MARCUS, PC.
100 West Monroe St., Suite: 309
Chicago, Illinois 60603
(312) 443-5600
Atty. No. 42724